MAKAR, J.,
concurring.
Last chance agreements (LCAs), sometimes known as return to work agreements, are written contracts between employers and wayward employees designed to provide the latter with one more chance at workplace redemption or suffer the consequences, typically termination. See generally Peter A. Bamberger & Linda H. Donahue, Employee Discharge and Reinstatement: Moral Hazards and the Mixed Consequences of Last Chance Agreements, *934 53 Indus. & Lab. Rel. Rev. 3 (1999). They are enforceable if correctly and precisely drafted; those that are not can become Hydra-like to their drafters by cutting off remedial paths only to find that others remain or have sprouted. See Drew Sar-rett, Last Chance Agreements For Federal Employees: Hidden Costs and Unseen Problems, 18 Fed. Circuit B.J. 157, 163 (2008); see also Martinez v. S. Fla. Water Mgmt. Dist., 705 So.2d 611, 612 (Fla. 4th DCA 1997); Confessor Tony Ramirez v. Amalgamated Transit Union, 33 F.P.E.R. 209 (2007). As one commentator recently noted, a last chance agreement “is a simple concept in theory” but experience shows that leeway exists “for one more chance after the last chance.” James J. Carty, One More Chance After The Last Chance: When Labor Arbitrators Fail To Enforce Last-Chance Agreements, 36 Oída. City U. L. Rev. 633, 634 (2011).
In this case, the Palm Beach Sheriffs Office entered the LCA with Sergeant Brett Raban, a member of the Palm Beach County Police Benevolent Association, which represents his interests in this appeal. By entering the LCA, the Sheriffs Office bargained away its right to terminate Raban for his initial violations of rules and regulations but received in return the ability to terminate Raban for any future violations without Raban contesting them; at least that was the Sheriffs Office’s intent.
The problem in this case is that the language of the LCA did not conclusively eliminate all of Raban’s remedial options. A small window of ambiguity exists through which Raban plausibly asserts that he bargained away all his remedial rights, except the right to have an arbitrator decide whether the LCA should be applied to allow his termination due to his subsequent violation. This situation is much like that in United Steel Workers of America v. Century Aluminum of Kentucky, 157 Fed.Appx. 869, 874 (6th Cir. 2005), where the court held that the last chance agreement at issue failed to clearly and unambiguously waive the issue of guilt; instead, it only waived the manner in which discipline could be imposed. The court noted that the employer could have drafted the agreement to exclude the issue of “factual guilt” from arbitration, but did not. Id. Likewise here, nothing prevented the Sheriffs Office from clearly and unambiguously excluding all avenues of relief or review including the arbitrability of factual guilt for the new violation alleged against Raban. Notably, both the hearing officer and the Public Employees Relations Commission (“PERC”) found that the LCA at issue was enforceable generally; and, per its terms, Raban could not appeal to a hearing review board. But, as PERC’s final order noted, the LCA did not exclude all remedial possibilities, stating “[h]ad the Sheriff included language similar to that found in numbered paragraph one in the concluding paragraphs of the Agreement which excluded the option of ‘challenge in any forum,’ our analysis would be different.” Because the LCA did not, I concur that affirmance is proper.